**SO ORDERED.**

**SIGNED this 19 day of January, 2007.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| RONALD BRUCE FINCH<br>DEBORAH M. FINCH | 06-2091-5-ATS |
| DEBTORS | |

**ORDER ALLOWING MOTION TO LIFT STAY**

Pending before the court is the motion of RBC Centura Bank ("RBC") for relief from the automatic stay to allow setoff pursuant to 11 U.S.C. § 553, or in the alternative for adequate protection. The chapter 13 debtors, Ronald Bruce Finch and Deborah M. Finch, filed a response conceding that RBC was entitled to setoff, but asserting that the provisions of § 553(b) applied to calculation of the setoff amount. A hearing was held in Raleigh, North Carolina, on January 10, 2007.

The debtors, Ronald and Deborah Finch, are obligated to RBC pursuant to Guaranty Agreements executed by Mr. and Mrs. Finch on February 11, 2003, to secure repayment of a loan made by RBC to RB Finch Electric, Inc. in the original amount of $25,000. The debtors

also maintained a checking account with RBC Centura. Near the end of 2006, the loan to RB Finch Electric went into default. RBC sent a letter to the Finches, dated December 14, 2006, informing them that the loan was in default and that RBC would exercise its right of setoff against the Finches' personal checking account unless the Finches made payment arrangements agreeable to the bank on or before December 21, 2006. Specifically, the letter stated that the loan was delinquent, had transitioned into liquidation status, and that RBC therefore was "exercising its right of set off," as follows:

> [N]otice is hereby given that pursuant to the terms of the aforementioned commercial loan note dated February 11, 2003, RBC Centura Bank is exercising its right of set off. Thus, the amount of $14,914.09 has been frozen in your personal checking account . . . and will be deducted from said checking account on or before December 21, 2006 unless other arrangements are agreed upon by the Bank. The amount deducted will be applied to the outstanding balance of the defaulted commercial loan account.

(Letter from Harrington to Finch of 12/14/06, ¶ 2).

The Finches did not contact RBC, but instead filed a petition for relief under chapter 13 of the Bankruptcy Code on December 20, 2006. According to RBC's filings in connection with its motion, the outstanding balance on the loan on December 21, 2006, was $14,914.09, and the balance in the checking account on December 21, 2006, was $27,786.38. The debtors contend that there was a large infusion of cash into the account at roughly the same time that the debtors sent a check for $25,000 to the IRS, and that RBC held their checking account

2

funds and refused to honor the check, resulting in damage to the debtors, RB Finch Electric, Inc., and their other creditors.

RBC now moves for relief from the automatic stay to set off the delinquent debt of RB Finch Electric against the Finches' checking deposit account, pursuant to 11 U.S.C. § 553. RBC and the debtors agree that the necessary elements required to effectuate a setoff (a pre-petition debt owing from the debtors to the creditor, a pre-petition debt owing from the creditor to the debtors, and mutuality of obligation) are present, and those aspects of the motion require no further discussion. Section 553(a) states: "Except as otherwise provided in this section . . . this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except [as provided thereafter]." 11 U.S.C. § 553(a). RBC thus is not precluded from pursuing setoff of this mutual debt under § 553(a).

At issue is whether RBC's administrative hold on the debtors' account is tantamount to a pre-petition setoff, or offset. If it is, then because the setoff took place on or within 90 days before the date of the filing of the petition, § 553(b) would apply. RBC argues that it has not yet off set the debt and seeks to lift the automatic stay in order to do so, so § 553(b) does not apply. The debtors contend that

3

§ 553(b)(1) does apply, which they argue limits the amount available for offset to the amount in the debtors' checking account on the 90th day prior to the filing, which was September 20, 2006. The amount at issue is approximately $3,600.

Section 553(b) provides:

(1)  Except with respect to a setoff of a kind described in [other sections of this title, none of which are applicable here], if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of--
 (A)  90 days before the date of the filing of the petition; and
 (B)  the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
(2) In this subsection, "insufficiency" means [the] amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

11 U.S.C. § 553(b) (2005).

The court of course takes the statute as its starting point, and its interpretation in this case is informed by the Supreme Court's discussion, in <u>Citizens Bank of Maryland v. Strumpf</u>, 516 U.S. 16, 116 S. Ct. 286 (1995), of whether a bank's post-petition administrative freeze of a chapter 13 debtor's checking account constituted a setoff in violation of the automatic stay. The court requested that the debtors and RBC provide supplemental briefs on the question of <u>Strumpf</u>'s applicability to this case, which they promptly did. For the reasons that follow, the court finds that <u>Strumpf</u> controls the

definition of a "setoff" and compels the conclusion that RBC's imposition of an administrative hold on the debtors' checking account was not a setoff within the meaning of § 553. That conclusion does not necessarily settle the issues between the parties, however, because neither <u>Strumpf</u> nor § 553 control or preclude other remedies the debtors may be eligible to pursue under state law.

In <u>Strumpf</u>, the debtor filed a petition under chapter 13 on January 25, 1991, at which time he maintained a checking account with the petitioner bank and also was in default on a loan from the bank. On October 2, 1991, the bank placed an administrative hold on the account to the extent necessary to protect the amount "it claimed was subject to setoff-that is, the bank refused to pay withdrawals from the account that would reduce the balance below the sum that it claimed was due on [the debtor's] loan." 116 S. Ct. at 288. The bank filed a motion for relief from stay, and the debtor filed a motion to hold the bank in contempt for violating the stay. The bankruptcy court first sanctioned the bank for violating the stay, and several weeks later granted the bank's motion for relief from stay and authorized setoff. By that time, the debtor had reduced the account balance to zero, so there was nothing to set off.

On appeal, the district court reversed, and on further appeal the Court of Appeals for the Fourth Circuit reversed again, holding that "an administrative hold is tantamount to the exercise of a right of

5

setoff and thus violates the automatic stay of § 362(a)(7)." 37 F.3d 155, 158 (4th Cir. 1994), rev'd, 116 S. Ct. 286.  The Supreme Court reversed and held that the bank's administrative hold was not a setoff within the meaning of § 362(a)(7).  116 S. Ct. at 289.

The Court framed the question before it as "whether [the bank's] refusal to pay its debt to [the debtor] upon the latter's demand constituted an exercise of the setoff right and hence violated the stay."  116 S. Ct. at 289.  The Court concluded that it did not, because the bank "did not purport permanently to reduce respondent's account balance by the amount of the defaulted loan." 116 S. Ct. at 289.  Instead, the bank refused to honor its promise to pay.  The Strumpf Court characterized the contractual relationship between the debtor and the bank as consisting of "nothing more or less than a promise to pay, from the bank to the depositor, . . . and [the bank's] temporary refusal to pay was neither a taking of possession of [the debtor's] property nor an exercising of control over it, but merely a refusal to perform its promise."  116 S. Ct. at 290 (citations omitted).

In this case, the factual context is significantly different, in that RBC implemented the hold just prior to the filing of the debtors' bankruptcy petition.  The date on which a petition is filed generally is the moment in time at which the respective rights of debtors and creditors are determined, and it is apparent that an administrative

6

freeze implemented prior to the filing of a bankruptcy petition can have a very different--and far more drastic--effect on the financial situation of the debtor and the ability of other creditors to recover than a freeze implemented post-petition, as in Strumpf.

The question before the Strumpf Court was whether a *post*-petition hold violated the automatic stay implemented by § 362(a), which precludes a creditor from undertaking "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," as well as "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §§ 362(a)(3), (a)(6). The Court's discussion of the nature of a setoff, however, was not limited to that context, and for that reason it appears to the court that Strumpf's discussion of whether an administrative hold constitutes a setoff applies in this case as well.

The Court held that an administrative hold by a bank, even when it is implemented for the express purpose of facilitating setoff, is not itself a setoff. The bank's hold in Strumpf "did not purport permanently to reduce respondent's account balance by the amount of the defaulted loan[,]" and thus did not satisfy the requirements developed by the majority of courts to consider the issue. The Court quoted those requirements with approval, noting that "a setoff has not occurred until three steps have been taken: (i) a decision to

7

effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff." 116 S. Ct. at 289 (citing cases).

The Court stated in conclusion, albeit in dicta, that what "§ 553(a)'s general rule [was] plainly intended to permit the temporary refusal of a creditor to pay a debt that is subject to setoff against a debtor owed by the bankrupt." 116 S. Ct. at 290. In light of the far-reaching dicta in Strumpf, the court concludes that RBC's freeze of the debtors' checking account did not constitute a setoff.[1]

The Strumpf Court also emphasized that it did not reach the question "[w]hether that temporary refusal was otherwise wrongful," characterizing that as "a separate matter." 116 S. Ct. at 289. That separate question remains open in this case, and the court makes no determination at this time as to whether the debtors have grounds to pursue any remedies that may be available to them under state law provisions such as those derived from Article 4 of the Uniform Commercial Code. E.g., N.C. Gen. Stat. § 25-4-402 (2005)(wrongful dishonor of items presented for payment). Any damages ensuing from a wrongful dishonor of check obviously would be outside the parameters of, and would not be limited by, the improvement of position factor in § 553(b)(1).

---

[1] The issue has been revisited by the Court of Appeals for the Fourth Circuit only once since Strumpf, and the appellate court's unpublished disposition of that matter is consistent with the court's conclusions herein. In re Lennan, 127 F.3d 1099 (Table), 1997 WL 657118 (4th Cir. 1997) (unpublished opinion).

8

For those reasons, the motion of RBC to lift the automatic stay to allow it to pursue setoff is **ALLOWED**.  The lifting of stay does not preclude the debtors from pursuing any actions they may have under applicable state law.

**SO ORDERED.**

**END OF DOCUMENT**